IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERNESTO J. BENAVIDEZ,

    Plaintiff,

vs.                                            No. CV 21-00351 MIS/CG

STATE OF NEW MEXICO, GOVERNOR
MICHELLE GRISHAM, BERNALILLO
COUNTY DISTRICT ATTORNEY, NEW
MEXICO CORRECTIONS DEPARTMENT,
GUADALUPE COUNTY CORRECTIONS,
and WEXFORD MEDICAL DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court under 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(6) on the Complaint (Tort) (Doc. 1-1) filed by Plaintiff Ernesto Benavidez in the Fourth Judicial District Court, State of New Mexico, County of Guadalupe and removed to this Court on April 16, 2021, by Defendant Guadalupe County Corrections. The Court will dismiss all federal claims based on immunity and failure to state a claim for relief, will decline to exercise supplemental jurisdiction over any state law claims, and will remand the state law claims back to the Fourth Judicial District Court.

### I. Factual and Procedural Background

Plaintiff Ernesto Benavidez filed his Complaint (Tort) in the State of New Mexico, County of Guadalupe, Fourth Judicial District Court on September 1, 2020. (Doc. 1-1 at 1). In his Complaint, Plaintiff brings claims under the New Mexico Tort Claims Act for damages based on the failure of Defendants to release him from prison and allowing him

to be exposed to the "Global Contagion COVID-19." (Doc. 1-1 at 1, 5, 18). Plaintiff Benavidez sets out five counts in his Complaint:

1. "Count 1: Cruel and Unhumane"  (Doc. 1-1 at 10);

2. "Count 2: Fourteenth Amend Equal Protection and Procedural Due Process (culpability)"  (Doc. 1-1 at 11);

3. "Count 3:  Medical Negligence" (Doc. 1-1 at 13);

4. "Count 4:  Governmental Equal Protection" (Doc. 1-1 at 14);

5. "Count 5:  Negligence and (Government Access to Court)" (Doc. 1-1 at 17).

He names, as Defendants, the State of New Mexico, Governor Michelle Grisham, Bernalillo County District Attorney, New Mexico Corrections Department, Guadalupe County Corrections, Wexford Medical Department, Assistant District Attorney Jerry W. Treich, Department of Corrections officials Eric Harrison and Gary Maciel, Warden Vincent Horton, Office of Senior Program Specialist Melissa Gonzales, Deputy Warden Mr. Peterson, and Medical Administrator Ms. Selena.  (Doc. 1-1 at 1-3).  Plaintiff Benavidez claims that the precautions taken at the Guadalupe County Corrections facility were inadequate to protect him and other inmates from exposure to COVID-19.  He contends the Governor should have used her pardon powers to release him and other inmates from incarceration. (Doc. 1-1 at 5).  He also claims that officials of the Department of Corrections conspired with the Second Judicial District, Bernalillo County District Attorney's Office, and Senior Program Specialist Gonzales to falsify COVID test results and used the false results to prevent prisoners from obtaining habeas corpus relief.  (Doc. 1 at 5).  He asks the Court to grant him:

> "1) Compensatory Damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorneys

> fees and emotional harm, suffered damages including but not limited to, physical injuries, pain and suffering and severe psychological and emotional distress in the amount sum in trial loss of chance by circumvention to a judicial proceeding for the safety and freedom of plaintiff 2) such other and further relief as the Court deems just and proper including monetary injunction relief if determined."

(Doc. 1-1 at 18).

## II. The Law Regarding Dismissal for Failure to State a Claim

Plaintiff Benavidez is proceeding pro se. The Court has the discretion to dismiss an pro se complaint *sua sponte* for failure to state a claim upon which relief may be granted under either 28 U.S.C. § 1915A or Fed. R. Civ. P. 12(b)(6). Under § 1915A, whenever a prisoner brings a civil action against government officials, the Court is obligated to screen the prisoner's complaint or petition. 28 U.S.C. § 1915A. Section 1915A states:

> "The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."
> . . .
> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief."

28 U.S.C. § 1915A(a) and (b).

Under Fed. R. Civ. P. 12(b)(6) the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under

Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A plaintiff must "nudge" claims across the line from conceivable to plausible. *Id.* In doing so, the plaintiff must furnish factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 1966. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009).

Where the complaint pleads only facts that do not permit the court to infer more than a mere possibility of misconduct, it has not shown that the plaintiff is entitled to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). In the end, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. In assessing whether plaintiff has met this burden, the court need not credit bald assertions or legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 127 S. Ct. at 1965. In sum, a plaintiff must allege enough factual matter, that, taken as true, suggests the legal conclusions that plaintiff asserts. *Iqbal*, 129 S. Ct. at 1950. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief.  *Twombly*, 550 U.S. at 570.

In reviewing a pro se complaint, the Court liberally construes the factual allegations.  *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992).

However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994). The court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the court assume the role of advocate for the pro se litigant. *Hall v. Bellmon,* 935 F.2d at 1110.

### III. Analysis of Plaintiff Benavidez's Claims

#### A. Civil Rights Claims Under 42 U.S.C. § 1983:

Section 1983 is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution. *See Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (Section 1983 creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution); *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006). Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . .subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

42 U.S.C. § 1983. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).[1] There must be a connection between official conduct and violation of a

---

[1] Plaintiff's Complaint alleges that the Defendants were acting under color of both state and federal law. (Doc. 1-1 at 2). However, because none of the Defendants are federal

5

constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Nor do generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, state any claim for relief. *Robbins v. Oklahoma,* 519 F.3d at 1249-50.

**B. Claims Against the State, Governor, Corrections Department, and Corrections Department Officials:**

Plaintiff Benavidez names as Defendants the State of New Mexico, the New Mexico Corrections Department, Michelle Grisham, Governor of the State of New Mexico, in her individual and official capacities, and Eric Harrison and Gary Maciel of the New Mexico Department of Corrections in their official capacity. (Doc. 1-1 at 1-4). The State

---

officials, the Court does not address Plaintiff's assertions of action under color of federal law.

is not a "person" within the meaning of 42 U.S.C. § 1983 and, therefore, there is no remedy against the State under § 1983. Section 1983 is a "remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (quotation marks omitted). It does not abrogate the states' sovereign immunity and neither the states, their agencies, or their officials acting in official capacity qualify as "persons" under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67, 71 (1989); *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) (unpublished).

The New Mexico Department of Corrections is an agency of the State of New Mexico, and its officials are agents of the State when acting in their official capacities. The State, the Department of Corrections, the Governor in her official capacity, and Corrections Department officers in their official capacities are not persons and no § 1983 relief is available against them. *Brown v. Buhman*, 822 F.3d at 1161 n.9.  Therefore, the federal claims against the State of New Mexico, the New Mexico Corrections Department, and the official capacity claims against Governor Michelle Grisham and NMCD officials Eric Harrison and Gary Maciel will be dismissed. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 63-64 (1989).

**C. Claims Against Guadalupe County Correctional Facility:** Plaintiff also names Guadalupe County Corrections, the correctional facility where he is incarcerated, as a Defendant.  (Doc. 1-1 at 1).  As a general rule, "a detention facility is not a person or legally created entity capable of being sued." *White v. Utah*, 5 Fed. Appx. 852, 853 (10th Cir. 2001) (unpublished). The Court has applied this rule in the context of § 1983, holding

that "a detention center is not a suable entity in a § 1983 action." *Apodaca v. New Mexico Adult Prob. and Parole*, 998 F.Supp.2d 1160, 1190 (D.N.M. 2014).

A detention center is not a suable entity, "because it is not a 'person' under 42 U.S.C. § 1983." *Kristich v. Metropolitan Detention Ctr.*, 2016 WL 5387675 at *2 (D.N.M. 2016). *See, also, Wishneski v. Lea Cty. Det. Ctr.*, 2012 WL 1688890, at *2 (D.N.M. 2012 (holding that "'a detention facility is not a person or legally created entity capable of being sued'"); *Gallegos v. Bernalillo Cty. Bd. of Cty. Commissioners*, 272 F. Supp. 3d 1256, 1264–65 (D.N.M. 2017). Guadalupe County Corrections is not a person for purposes of § 1983. Therefore, the Court will dismiss all federal claims against Guadalupe County Corrections.

### D. Claims Against Bernalillo County District Attorney, Assistant District Attorney Treich, and Senior Program Specialist/Habeas Unit Melissa Gonzales:

Plaintiff's Complaint identifies the Bernalillo County District Attorney, Assistant District Attorney Treich, and Bernalillo County DA Senior Program Specialist/Habeas Unit, Melissa Gonzales as Defendants. (Doc. 1-1 at 1, 4). Plaintiff Benavidez contends:

> "Bernalillo County District Attorneys Office and Jerry W. Treich (Defendant) has conspired with Defendants Eric Harrison, Gary Maciel, GCCF Warden Vincent Horton, and Melissa Gonzales of the Senior Specialist Unit/Habeas Division have falsified test results by stating test results came back negative on an inmates that may have come in contact with Nurse Ms. Sanchez . . . This false fabricated test results were used by Defendant District Attorney Jerry W. Treich and all above Defendants, within the procedural due process to have plaintiffs petitions not considered by the courts."

(Doc. 1-1 at 5). The Court notes that Benavidez uses the term "evidently false" in describing the test results elsewhere in the Complaint. (Doc. 1-1 at 8).

Like judges, prosecutors are entitled to immunity in the performance of their prosecutorial functions. *Miller v. Spiers*, 434 F.Supp.2d 1064 (2006); *Johnson v. Lally,* 118 N.M. 795, 796, 887 P.2d 1262, 1263 (Ct. App. 1994). The common law has long

8

recognized prosecutors must be given immunity from the chilling effects of civil liability. *Burns v. Reed,* 500 U.S. 478, 485 (1991); *Griffith v. Slinkard,* 146 Ind. 117, 44 N.E. 1001, 1002 (1896); *Collins,* 111 N.M. at 396, 806 P.2d at 45. Prosecutors are absolutely immune from damages for their advocacy and activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

The allegations of the Complaint are that the Bernalillo County District Attorney, Deputy District Attorney Treich, and Specialist Gonzales used allegedly inaccurate evidence in habeas corpus court proceedings. (Doc. 1-1 at 5). These allegations show actions intimately associated with the judicial phase of criminal proceedings and, as prosecutors, the Bernalillo County District Attorney, Deputy District Attorney Treich, and Specialist Gonzales are immune from damages. *Imbler v. Pachtman*, 424 U.S. at 430.

The Complaint does not identify any specific court proceeding but, instead makes generalized allegations regarding "plaintiffs petitions." (Doc. 1-1 at 5). Exhibits to the Complaint indicate that Benavidez filed a Pro Se Motion for Immediate Release Due to public Health Emergency in two criminal cases, D-202-CR-2017-04191 and D-202-CR-2017-00750. (Doc. 1-1, Exhibit A). That Motion was denied by the Second Judicial District Court on July 29, 2020, on the grounds that Benavidez had failed to make the necessary showing of an extraordinary change in circumstances caused by the current public health emergency." (Doc. 1-1, Exhibit A2).

Plaintiff's contention that Defendants falsified test results is apparently based on an e-mail exchange during and related to legal proceedings in the Second Judicial District Court. (Doc. 1-1, Exhibit D). The exchange was among representatives of the Bernalillo County District Attorney's Office, officials at the New Mexico Department of Corrections,

and officials at Guadalupe County Corrections facility confirming that a nurse at the facility had tested positive for COVID-19 and detailing the steps taken by the facility, including quarantine, testing of symptomatic individuals, screening of asymptomatic individuals, social distancing, and contact tracing. (Doc. 101, Exhibit D). The Exhibits to the Complaint show that the actions by the Bernalillo County District Attorney, Deputy District Attorney Treich, and Senior Program Specialist Gonzales were directly involved in the judicial phase of court proceedings in criminal cases, and the claims against those Defendants are barred by prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. at 430.

**E.   Individual Claims Against Medical Administrator Ms. Selena, Warden Horton, Deputy Warden Peterson, Corrections Officials, and the Governor:**

Plaintiff asserts 8th Amendment claims against the Medical Administrator for Wexford Medical, Ms. Selena. (Doc. 1-1 at 3, 10). His specific allegations relating to Ms. Selena are as follows;

> "The only way any of the inmates can be cleared to come back from quarantine after seven days, there has to be a clearance from Administrator Nurse Ms. Selena . . .This means *if* Nurse Ms. Selena signed allowing inmates to go back to population without COVID-19 testing them after their direct contact with Nurse Ms. Sanchez, then that is medical negligence. . . And *if* the Nurse Ms. Selena signed a medical document showing inmates were tested when they were not constitutes fabricating false statements on a legal document." (Doc. 1-1 at 7) (emphasis added).

> "Administrator of Medical Nurse Ms. Selena is going to have to prove that all inmates signed to be tested for COVID-19 virus just like inmates that pick up KOP prescriptions; the COVID-19 test is an administration and distribution of medicine."
> (Doc. 1-1 at 8).

> "Plaintiff even asked Nurse Ms. Selena to check his tempature while she was making her rounds passing his cell 112-118 at the time Ms. Selena stated I am not going to check you if you are showing no symptoms."
> (Doc. 1-1 at 10).

Plaintiff's contentions that Nurse Ms. Selena's conduct constituted medical

10

negligence do not rise to the level of a constitutional violation. Accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition does not constitute a medical wrong under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Further, Plaintiff's difference of opinion with Ms. Selena as to whether he needed to have his temperature checked does not constitute an 8th amendment violation. A difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See, e. g., Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Thompson v. Gibson,* 289 F.3d 1218, 1222 (10th Cir.2002); *Taylor v. Ortiz*, 410 F. App'x 76, 79 (10th Cir. 2010). Plaintiff's Complaint does not state a § 1983 claim against Ms. Selena.

Benavidez asserts individual capacity claims against Warden Horton, Deputy Warden Peterson, and Corrections Department officials Harrison and Maciel. (Doc. 1-1 at 2). Most of the allegations in the Complaint are generalized references to "Defendants," "officials," and "staff" and do not specify individualized conduct by any particular Defendant. (*See, e.g.,* Doc. 1-1 at 13, 17). The only allegations in the Complaint that specifically identify Defendants Horton, Harrison and Maciel are that:

> "Bernalillo County District Attorneys Office and Jerry W. Treich (Defendant) has conspired with Defendants Eric Harrison, Gary Maciel, GCCF Warden Vincent Horton, and Melissa Gonzales of the Senior Specialist Unit/Habeas Division have falsified test results by stating test results came back negative on an inmates that may have come in contact with Nurse Ms. Sanchez . . . This false fabricated test results were used by Defendant District Attorney Jerry W. Treich and all above Defendants, within the procedural due process to have plaintiffs petitions not considered by the courts."

(Doc. 1-1 at 5). As for Defendant Peterson, the Complaint states that "the only way any of the inmates can be cleared to come back from quarantine after seven days" is by

11

a clearance signed by Warden Horton and/or Deputy Warden Mr. Peterson. (Doc. 1-1 at 7). Plaintiff's allegations fail to show that any of the Defendants, through their own individual actions, violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. at 676. Nor does Plaintiff show any personal involvement by an identified official in any alleged constitutional violation against Plaintiff Benavidez. *Fogarty v. Gallegos,* 523 F.3d at 1162. Plaintiff's Complaint does "make clear exactly who is alleged to have done what to whom," and is insufficient to provide each individual with fair notice as to the basis of the claim against him. *Robbins v. Oklahoma,* 519 F.3d at 1249-50. Plaintiff's generalized statements that Defendants conspired with others, without plausible supporting factual allegations, fail to state any claim for relief. *Robbins v. Oklahoma,* 519 F.3d at 1249-50.

Plaintiff Benavidez further asserts individual capacity claims against Governor Grisham. Rather than identifying acts of Governor Grisham, however, Plaintiff claims that the Governor had power to release him from incarceration during the COVID pandemic and:

> "has to prove why it is not her responsibility to pardon and also release me from prison" . . . "will have to show why she didn't permit more prisoners to be released after the deadly breakout in Otero County Prison" . . . "going to have to prove why prisons are not having COVID-19 test documented by signature" . . . "going to have to prove why she thinks it is not important that (GCCF) and all prisons dont need adequate COVID-19 test for prison guards and staff to test (daily)" . . . "going to have to prove why it is allowed for prison supervisors and prison guards to falsify test results, not administer tests properly to ensure the safety or risk of death to plaintiff and others during the Global Pandemic in which has been treated as a joke."

(Doc. 1-1 at 9). The allegations of the Complaint do not state a § 1983 individual claim for relief against Governor Grisham. Plaintiff does not plead that the Governor, through the Governor's own individual actions, violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. at 676. Nor does Plaintiff Benavidez show any personal involvement by

12

Governor Grisham in any alleged constitutional violation against Benavidez. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). Plaintiff's conclusory statements that the Governor is required to prove various matters is not factually sufficient to state a plausible § 1983 claim for relief. *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

**F. Claims Against Wexford Medical Department:** Benavidez appears to be attempting to hold private corporation Wexford Medical vicariously liable for the actions of its employee under 42 U.S.C. § 1983. (Doc. 1-1 at 3). Where, as in this case, a corporate entity is performing the actions typically performed by a state or municipality, like operating a prison, that corporate entity can be sued under § 1983. *Richardson v. McKnight*, 521 U.S. 399, 413 (1997) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982)) (leaving the determination of whether the employees of a private corporation acted under color of state law in violation of § 1983 to the district court); *Smith v. Cochran*, 339 F.3d 1205, 1215-16 (10th Cir. 2003) (citations omitted) ("[P]ersons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment.").

However, to succeed in a § 1983 action against a corporate entity, the plaintiff must prove that the corporate employee or agent committed a constitutional violation and that the violation was a direct result of some policy or custom of the corporation. *Myers v. Oklahoma Cnty Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690-95 (1978); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (citations omitted) ("[C]aselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants.").

As set out, above, the allegations of the Complaint are factually insufficient to show that any employee of Wexford individually engaged in conduct that violated a constitutional right. Further, nowhere in his Complaint does Plaintiff Benavidez contend that any policy or custom of Wexford Medical was a direct cause or a moving force behind any violation of Benavidez's civil rights. *Myers v. Oklahoma Cnty Bd. of Cnty. Comm'rs*, 151 F.3d at 1316. The Complaint does not state a claim for § 1983 relief against Defendant Wexford Medical Department. *Monell*, 436 U.S. at 690-695.

### G. Eighth Amendment, Due Process, and Equal Protection Claims:

The Court has concluded that Plaintiff's Complaint does not state a § 1983 claim for relief against any of the individual or entity Defendants. The Court also concludes that the Complaint does not state a substantive claim for § 1983 relief based on any Eighth Amendment, due process, or equal protection violation.

**1. Eighth Amendment.** Plaintiff Benavidez includes a claim that the Defendants' response to the COVID-19 pandemic was inadequate and constituted "cruel and unhumane" treatment. (Doc. 1-1, Count 1 at 10-11). He summarizes his Eighth Amendment claim as follows:

> "Plaintiff is confined in Guadalupe County Corrections (Culprit) Facility which has encountered COVID-19 infected prison guards and staff even after screening and taking reasonable measures to precaution- prevent the risk of spreading the contagion, the virus has prevailed to show that the precautions are not sufficient."

Even if his Complaint was sufficient to state a § 1983 claim for relief against any individual or entity Defendant, Plaintiff's claims that the medical protocols and handling of COVID-19 were inadequate fail to state a claim for relief.

14

In order to proceed on an Eighth Amendment deliberate indifference to medical needs claim, Plaintiff Benavidez must plead facts tending to show that he had a serious medical need and that an identified individual official knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir.1999).  The showing required to give rise to a cognizable Eighth Amendment violation is deliberate refusal to provide medical attention. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006); *Green v. Branson,* 108 F.3d 1296, 1304 (10th Cir.1997).

Plaintiff's Eighth Amendment claim fails for several reasons. First, Plaintiff does not show he has a serious medical need for purposes of an Eighth Amendment claim.  A medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted).  Plaintiff's Complaint does not allege that Plaintiff tested positive for or had symptoms of COVID-19.  Plaintiff Benavidez alleges Ms. Selena did not check his temperature even when he asked her to, stating that she was not going to do so if he was not showing any symptoms.  (Doc. 1-1 at 10).  In the absence of any evidence of a serious medical condition or medical need, Plaintiff's allegations do not establish any Eighth Amendment claim. *Ramos v. Lamm,* 639 F.2d at 575.

Further, Benavidez does not identify any individual official that deliberately refused to provide him needed medical care.  *Callahan v. Poppell*, 471 F.3d at 1160.  The allegations of the Complaint do not tend to show any culpable refusal to provide medical care on the part of Ms. Selena or any other official.  Plaintiff's Complaint does not state

an 8th Amendment deliberate indifference claim on which relief can be granted. *Green v. Branson,* 108 F.3d at 1304.

    **2. Due Process:** In Count 2 of the Complaint, Benavidez alleges a procedural due process claim. (Doc. 1-1 at 11-12). "Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property." *Becker v. Kroll,* 494 F.3d 904, 918 n. 8 (10th Cir. 2007) (citation omitted). Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 557 (1974).

    In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Hennigh v. City of Shanee,* 155 F.3d 1249, 1253 (10th Cir. 1998). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show that he was not afforded an appropriate level of process. *Id.* "Where procedural due process must be afforded because a 'liberty' or 'property' interest is within the Fourteenth Amendment's protection, there must be determined 'what process is due' in the particular circumstance." *Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 847 (1977). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' "*Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Twombly,* 550 U.S. at 570.

    In his Complaint, Benavidez makes conclusory arguments that allegedly false test results "fabricated on a legal document to reduce Plaintiffs chances of demonstrating extraordinary changes to have the process of Plaintiffs means of self-protecting, by petitions to the courts addressing the COVID-19 changes, for the procedural due process

16

to be released from prison." (Doc. 1-1 at 12). Benavidez does not cite to a particular legal proceeding or identify exactly how he was deprived of an opportunity to be heard at a meaningful time or in a meaningful way. *Mathews v. Eldridge,* 424 U.S. at 333. To the contrary, the exhibits to the Complaint demonstrate that Plaintiff did file a proceeding requesting release from custody, was afforded the opportunity to present evidence and arguments, did present his contention that COVID test results were falsified, and was denied relief because the Court determined he had not met the burden of establishing extraordinary circumstances justifying relief. (Doc. 1-1, Exhibits A, B). Plaintiff's Complaint does not state a procedural due process claim for relief. *Mathews v. Eldridge,* 424 U.S. at 333.

**3. Equal Protection:** Plaintiff Benavidez also makes a claim for "Governmental Equal Protection." (Doc. 1-1, Count 4 at 14). The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992)). "The Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.'" *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007) (unpublished) (quoting *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997)).

Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals that is

being treated differently from similarly situated individuals who are not in that class. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). The plaintiff must demonstrate that the "'decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of' the law's differential treatment of a particular class of persons." *SECSYS, LLC v. Vigil*, 666 F.3d at 685 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). In other words, "a discriminatory effect against a group or class may flow from state action, it may even be a foreseen (or known) consequence of state action, but it does not run afoul of the Constitution unless it is an intended consequence of state action." *SECSYS, LLC v. Vigil*, 666 F.3d at 685.  *Hunnicutt v. DeSantiago*, 429 F. Supp. 3d 905, 916–17 (D.N.M. 2019).

Plaintiff does not make any allegation that he is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class. *See SECSYS, LLC v. Vigil*, 666 F.3d at 688.  Instead, he appears to argue that the Governor's negligent exercise of executive power has prevented the courts from accurately looking at and finding that his criminal conviction is wrongful.  (Doc. 1-1 at 14). Count 4 of Plaintiff's Complaint does not state a cognizable equal protection claim under § 1983.

### IV. This Court will Remand Plaintiff's Case to State Court

Plaintiff's Complaint is on a New Mexico court form and states that the lawsuit is brought under the New Mexico Tort Claims Act, Chapter 41 N.M.S.A.  (Doc. 1-1 at 1).  A majority of Plaintiff's allegations assert New Mexico tort law claims, such as negligence, medical negligence, and emotional distress.  (Doc. 1-1 at 1, 13, 17).   As noted, above,

the Complaint makes frequent reference to and asserts two counts of negligence. (Doc. 1-1, Count 3 and Count 5).

Within the supplemental jurisdiction granted by 28 U.S.C. § 1367, a federal court has subject-matter jurisdiction over certain state-law claims. A district court's decision whether to exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction is discretionary. *See* § 1367(c). Under § 1367(c), the district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. *Osborn v. Haley,* 549 U.S. 225, 245 (2007); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, (2006).

The U.S. Supreme Court has stated that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726 (1966). When all federal claims have been dismissed, a district court may, and usually should, decline to exercise jurisdiction over any remaining state claims. *Koch v. City of Del City,* 660 F.3d 1228, 1248 (10th Cir.2011); *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998); *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014).

This Court is dismissing any federal claims in this case. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims and will remand this case to the Court from which it was removed. *Osborn v. Haley,* 549 U.S. at 245.

### V. Pending Motion

Also pending before the Court is the Motion to Dismiss for Insufficient Service of Process filed by Defendants Governor Grisham, New Mexico Department of Corrections, and Department of Corrections Employees (Doc. 5). The Court will deny the Motion as moot in light of the dismissal of all federal claims and remand of any state law claims to state court. The denial of the Motion is without prejudice to Defendant's right to renew the Motion to Dismiss in state court following remand.

**IT IS ORDERED:**

**(1)** the Motion to Dismiss for Insufficient Service of Process filed by Defendants Governor Grisham, New Mexico Department of Corrections, and Department of Corrections Employees (Doc. 5) is **DENIED as moot;**

**(2)** any federal claims asserted in the Complaint (Tort) filed by Plaintiff Ernesto Benavidez (Doc. 1-1) are **DISMISSED** under 28 U.S.C. §§ 1915A and Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief and immunity; and

**(3)** the Court declines to exercise supplemental jurisdiction, and all state law claims are **REMANDED** to the State of New Mexico, County of Guadalupe, Fourth Judicial District Court.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE